**B**

## COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION:

| | |
|---|---|
| JANE DOE, Personal Representative )<br>Of the ESTATE OF N. M. )<br>              Plaintiff )<br>vs. )<br>                  )<br>CITY OF NORTHAMPTON )<br>            Defendant )| *HAMPSHIRE SUPERIOR COURT*<br><br>JAN **2 7** 2023<br><br>*HARRY JEKANOWSKI, JR.*<br>*CLERK/MAGISTRATE* |

## PLAINTIFF, JANE DOE AS PERSONAL REPRESENTATIVE OF THE ESTATE OF N.M M.'S COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This is a Complaint for Compensatory and Punitive Damages for the wrongful death of N.M., a sophomore at Northampton Public High School. This Complaint is based on violations of 42 U.S.C. §1983; Title VI of the Civil Rights Act; the Fourteenth and First Amendment to the United States Constitution as well as pendant state common law and statutory claims. These claims are the result of the City of Northampton's negligence, intentional and negligent infliction of emotional distress, and a multitude of other statutory and constitutional violation stemming from the bullying N.M. experienced at Northampton Public Highschool.

### PARTIES

1. The Plaintiff, Jane Doe, is the Personal Representative of the Estate of N.M. Jane Doe is N. M.'s mother. A copy of the Appointment of Jane Doe as the Personal Representative of the Estate of N.M., is attached hereto as Exhibit A.

2. At all times relevant hereto, the deceased, N. M., was a minor (date of birth September 1, 2003) who attended Northampton Public High School.

3. Defendant, City of Northampton (hereinafter "City" or "Northampton"), is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts, located in Hampshire County, Commonwealth of Massachusetts. Among its duly constituted governmental departments and agencies, the City operates the Northampton School Committee and Northampton Public Schools.

# FACTS COMMON TO ALL COUNTS

4. At all times material hereto, the Defendant, City of Northampton, operated a public school known as Northampton High School, in Northampton, Hampshire County, Commonwealth of Massachusetts.

5. Defendant, City of Northampton, has a legal duty to assure the safety of its students, including students that attend Northampton High School.

6. At all times material hereto, Defendant, City of Northampton, received federal funds through a variety of educational programs.

7. At all times material hereto, the Defendant was subject to the requirements of Title VI of the Civil Rights Act of 1964, which provides that no person, "on the grounds of race, color, or national origin, be excluded from participation in, be denied in the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI.

8. At all times material hereto, Northampton High School was subject to the direction, control, and supervision of the Defendant, City of Northampton's School Committee, which was authorized by law to adopt and implement, and which did adopt and implement policies, procedures, rules, and regulations to govern the sage and efficient operation of the City's public schools for the purpose of safely and properly educating the City's minor public school student population.

9. At all times material hereto, the City's School Committee promulgated policies and procedures which were in effect before and at the time of the repeated bullying, racial discrimination, and abuse of the minor plaintiff, N. M., which is described below.

10. According to the City, "bullying" is the repeated use by one or more students, or by a member of the school staff, of a written, verbal, or electronic expression or a physical act or gesture or any combination thereof, directed at a victim that: (i) causes physical or emotional harm to the victim; (ii) places the victim in reasonable fear of harm to herself; (iii) creates a hostile environment at school for the victim; (iv) infringes on the rights of the victim at school; or (v) materially and substantially disrupts the education process or the orderly operation of a school.

11. According to the City, "cyberbullying" is bullying through the use of technology or electronic devices such as telephones, cell phones, computers, and the Internet. It includes, but is not limited to, emails, instant messages, text messages, and cyber postings.

12. According to the City, "harassment" is defined as unwelcome, intentional, unprovoked discriminatory behavior, toward an individual, motivated by membership (real or perceived) in a protected category including: race, color, religion, ethnicity/natural origin, disability, gender, gender identity, sexual orientation, and age.

13. At all times material hereto, the City implemented policies and procedures to "respond promptly to reports of bullying, harassment, and/or retaliation."

14. At all times material hereto, and according to the City's policies and procedures, Celeste Malvezzi ("Malvezzi") in her role as Assistant Principal, was responsible for the investigation into complaints of bullying, harassment and/or retaliation.

15. At all times material hereto, and according to the City's policies and procedures, investigations of any complaints were to be documented on the "Bullying and Harassment Incident report Tracking Form," which was to be sent to the District Equity Coordinator.

16. As part of the investigation into a complaint of bullying, Malvezzi was required to, among other things, interview students, staff, witnesses, parents or guardians.

17. At all times material hereto, and according to the City's policies and procedures, if the allegation of bullying was substantiated, Malvezzi was required to:

- Provide for reasonable, timely, age-appropriate, corrective action intended to end the discrimination, harassment, bullying and/or retaliation and prevent it from recurring, including appropriate disciplinary action as set forth by the Codes of Conduct of the school;

- Document, as needed, reasonable steps to address the effects of the discrimination, harassment, or bullying on the complainant; and

- Document, as needed, reasonable steps to protect the complainant from retaliation as a result of communicating the complaint.

18. At all times relevant hereto, and according to the City's policies and procedures, each school building administrator is required to establish a safety plan for targets of bullying and harassment, which included the following:

- Selection of a "safe zone"; an area identified by the target where he or she can go to get help from a trusted adult.

- A mechanism for information all relevant adults of the situation between the aggressor(s) and target(s)

- A plan for monitoring less structured areas of the school environment, such as buses, lunchroom, and playground.

- Follow-up with parents/guardians of all involved to inform them of actions being taken.

- Assessment of effectiveness of the above interventions on a regular basis.

19. At all times relevant hereto, the minor Plaintiff, N. M., was a biracial student who suffered from anxiety and post-traumatic stress disorder ("PTSD").

20. During the 2017-2018 school year, N. M. was an 8th grade student at Hilltown Cooperative Charter Public School. According to her progress reports, N. M. was a loved and respected member of the community who was making great strides in her engagement with academic challenges.

21. Counseling notes from that school year also show that N. M. had shown significant improvement over the past two years, was more comfortable with herself, and appeared to be more grounded and happier.

22. In June of 2018, Hilltown Cooperative Charter Public School invited Defendant, Northampton to a meeting with N.M.in order to facilitate the transition to public high school. Northampton did not show up to the meeting.

23. During the summer of 2018, the minor Plaintiff, N. M., began to be bullied by a group of students her age. The bullies included O. D., A. M., and J.F.

24. In August of 2018, Jane Doe met with officials from Northampton Public High School to discuss N.M.'s Individualized Education Plan ("IEP"). Under her IEP, N.M. was to be given instruction and support in identifying emotional responses that created barriers and challenges to her academic activities and social interactions with peers and adults. She also required instruction and support in learning, practicing, and generalizing strategies for emotional regulation and problem solving.

25. Malvezzi and Andrea Leydon, N.M.'s new adjustment counselor, were present at this meeting.

26. During this meeting, Jane Doe also alerted school officials that N.M. was being bullied by a group of students, including O. D., A. M., and J.F.

27. In September of 2018, N.M., began attending Northampton High School as a freshman.

28. O. D., A. M., and J.F. also attended Northampton High School. Immediately the three girls began harassing and bullying N.M. at school.

29. O.D., A.M., and J.F. would send messages through social media alerting other students when N.M. would enter the school or leave classes. The students would then gather in N.M.'s path of travel so that she could not enter or leave. The students would also physically gesture towards N.M. as if they were going to attack her.

30. When the groups would gather in the entranceways, N.M. would feel threatened.

31. A.M. would tell N.M. that she should not have her hair braided because she was not "black enough."

32. J. threatened to mark up and/or scar N.M.'s face because N.M. thought she was "too beautiful."

33. Upon information and belief, students would make other racial remarks towards N.M.

34. Both Jane Doe and N. M. reported these threats to Defendant, City of Northampton.

35. On September 14, 2018, Malvezzi left Jane Doe a voicemail concerning the reports of bullying. Malvezzi confirmed that the issue seemed to revolve around students lurking outside of N.M.'s math class

36. Given the report of bullying towards N.M., Malvezzi and the City were obligated to investigate the incidents and create a Bullying and Harassment Incident Report Tracking Form.

37. Given that the report of bullying towards N.M. was substantiated, Defendants Malvezzi and the City were obligated to establish a Safety Plan for N.M.

38. These obligations were ministerial in nature and not discretionary.

39. Neither Malvezzi, nor the City, took any of the mandatory steps to investigate the bullying incidents.

40. On October 15, 2018, N.M.'s IEP team met to discuss N.M.'s progress. During the meeting, Jane Doe noted that N.M. was lonely and was being bullied. The Team determined that bullying was a concern, and that it would be addressed through the IEP.

41. However, school officials did not launch any legitimate investigation into the bullying. Instead, N.M. continued to be bullied at school.

42. One such example occurred when J.F. sent N.M. a photograph of herself with N.M.'s counselor, Andrea Leydon. The photograph included a caption stating "she [Andre Leydon] hates your guts too."

43. Officials at Northampton High School were aware that the photograph was sent to N.M., but did nothing to correct the situation. As a result, N.M.'s First Amendment right to report the bullying to school officials, including Andrea Leydon, was chilled.

44. Given the continued reports of bullying towards N.M., Malvezzi and the City were obligated to investigate the incidents and create a Bullying and Harassment Incident Report Tracking Form.

45. Given that the continued reports of bullying towards N.M. was substantiated, Malvezzi and the City were obligated to establish a Safety Plan for N.M.

46. Neither Malvezzi nor the City took any of the mandatory steps to protect N.M.

47. On February 15, 2019, another IEP meeting was held. Jane Doe reported that N.M. was struggling due to the recent and ongoing bullying she was experiencing at school. Jane Doe reported that N.M. was terrified to attend to school, as she was afraid of being beat up and harassed. N.M. was also afraid that the students had access to various teachers, who were also talking about the bullying.

48. During the meeting, one of the team members stated that there were a number of incidents that both Jane Doe and N.M. were concerned about, but that they had not reached the level of filing a bullying report.

49. Associate Direct of Student Services David Messing noted that no official bullying report had been filed, but that an investigation would need to be launched into the incidents.

50. At the meeting, Jane Doe requested a safety plan be put in place to protect her daughter according to the schools mandatory bullying policies. The IEP team, specifically David Messing, refused, instead stating the safety concerns needed to be delineated in the IEP plan.

51. As of March 26, 2019, N.M. did not feel comfortable attending school due to the constant bullying she experienced. She also felt an increase in anxiety and depression.

52. In May of 2019, N.M. attempted to take her own life. During her subsequent hospitalizations, she reported that she was fearful to go back to school due to the bullying she had experienced, and had thought it was better off to die.

53. The Department of Children and Families ("DCF") conducted an investigation into the attempted suicide. As part of the investigation, DCF contacted Northampton Public High School and spoke with Andrea Leydon.

54. Andrea Leydon, on behalf of Northampton High School intentionally lied about the level of bullying N.M. was experiencing as a student at Northampton High School. Instead of admitting that N.M. was being bullied, Leydon lied to DCF and stated that the school determined it was just "peer on peer conflict."

55. The School's determination to classify the threats and bullying as "peer on peer conflict" instead of bullying is in direct contradiction to the City of Northampton's definition of bullying, which mirrors the definition found within G.L. 71. §370.

56. The School's determination to classify the threats and bullying as "peer on peer conflict" contradicts City of Northampton's definition of cyberbullying.

57. Andrea Leydon, on behalf of Northampton High School, lied to DCF and stated that N.M. and Jane Doe never reported that N.M. was bullied to the school.

58. Andrea Leydon, on behalf of Northampton High School, lied to DCF, and reported that it was N.M. who was the aggressor, and not the other students.

59. When DCF confronted Andrea Leydon about her misrepresentations, Leydon reported "she was only doing what she has been told to do."

60. As a result of Andrea Leydon's statements to DCF, Plaintiffs' First Amendment Right to report the incidents of bullying and harassment were chilled.

61. In July of 2019, students from Northampton High School created a website named "Let's Roast N.M." in which they bullied N.M.

62. When N.M. returned to school in September of 2019, she was placed into a special program within Northampton Highschool, known as The Academy. The program was to provide N.M. with special accommodations and protect her from bullying.

63. However, the Academy was actually a behavioral program for students who were aggressive and were consistently in a state of heightened emotions.

64. On September 9, 2019, N.M. was physically assaulted by two students, R. and J.F., who jumped N.M. and kicked her multiple times in the head. As a result of the incident, N.M. sustained a concussion.

65. The fight was videotaped and disseminated across social media.

66. As a result of the incident, N.M. mental health began to deteriorate even further, with escalating behaviors, including verbal outbursts.

67. As a result of the continued bullying, including the September 9, 2019, physical assault, N.M.'s anxiety drastically increased.

68. On September 10, 2019, Northampton Public School implemented a Safety and Supervision Plan for N.M. Pursuant to the implemented Plan, N.M. was to be intentionally supervised by an adult at all times during the school day in order to secure her physical and emotional safety. (Exhibit B).

69. The Safety Plan implemented by Northampton Public Schools was an explicit and specific assurance of safety, made directly to the Plaintiff, Jane Doe, and her daughter, N. M., that the Northampton Public School System would protect N.M. from physical and emotional harm.

70. The Plaintiff, Jane Doe, would not have allowed N.M. return to Northampton High School without the specific assurance of safety through the implemented Safety Plan.

71. Despite the implementation of the Safety Plan, N.M. continued to experience bullying, harassment, and physical attacks.

72. On September 19, 2019, while in school N.M. began to receive inappropriate text messages and was being bullied via social media.

73. The bullying subsequently led to a verbal altercation between N.M. and another peer.

74. After she was brought to the office, N.M. made suicidal statements.

75. Although this behavior was consistent with N.M.'s emotional dysregulation following the physical attack ten (10) days earlier, Malvezzi, retaliated against N.M., suspending her for one day.

76. On October 22, 2019, a male student entered N.M. personal space and would not leave her alone. He called her a "bitch" and stated "this is why you do not have any friends."

77. Even though one of the Special Education Teachers witnessed the incident, she decided not to intervene on N.M.'s behalf, as required by the Safety Plan.

78. N.M. asked the male student to get out of her personal space. As she tried to leave, she kicked the boy in his steel-toed boot.

79. As a result of the incident, Malvezzi suspended N.M. for two days.

80. Instead of protecting N.M. as required by the Safety Plan, the City, through Malvezzi, retaliated against N.M.

81. In November of 2019, despite the specific assurance of safety through the implementation of the Safety and Supervision Plan, N. M. was savagely and brutally attacked for a second time while attending Northampton Highschool.

82. Following the attack, N.M. experienced nightmares and flashbacks.

83. The continuous bullying and trauma N.M. experienced caused her to create a negative thought pattern, leaving her often feeling poorly about herself.

84. On November 19, 2019, J.F. approached N.M. while she was in class, and began insulting N.M. J.F. also physically threatened N.M. A teacher instructed N.M. to leave the classroom in order to diffuse the situation. As N.M. left, she slammed the door, accidentally catching the teacher's arm in the process.

85. The incident was caught on videotape. The videotape confirmed that J.F. was the aggressor, and not N.M.

86. As a result of this incident, N.M. was again given a suspension.

87. In a meeting about the incidents, Malvezzi told Jane Doe and N. M. that she noticed when N.M. wore flashy eyelashes, she tended to encounter more problems at school. Assistant Principal Malvezzi then followed up with "but I know [the eyelashes] are cultural for you."

88. Upon information and belief, N.M.'s suspensions following her physical assault in September of 2019 were retaliatory in nature. As a result, N.M.'s First Amendment right to report the bullying, harassment, and discrimination she was facing was chilled.

89. Thereafter, Jane Doe pulled N.M. out of Northampton High School because the School could not keep N.M. safe despite its specific assurance of safety on September 10, 2019.

90. On December 15, 2019, N.M. reported that it was unfair that she was not able to continue attending Northampton High School because of her bullies, and that she was the only one suffering as a result of the school's inability to protect her.

91. On January 30, 2020, N.M. broke down crying, telling her mother, Jane Doe that she could not "understand why they [could not] keep her safe."

92. On January 30, 2020, due Defendant's repeated decisions to intentionally misclassify the bullying as "peer on peer conflict" and the continued retaliation against her, N.M. took her own life.

93. At all times material hereto, Defendant, City of Northampton, had an unwritten policy to intentionally downgrade and misclassify bullying incidents as incidents of "peer on peer conflict."

94. Defendant's policy of downgrading and misclassifying incidents of bullying as "peer on peer conflict" allowed Defendant City of Northampton and Malvezzi to circumvent their obligations to conduct an investigation, discipline the bullies, and implement necessary safety policies.

95. Defendant's policy of downgrading and misclassifying incidents and not enforcing policies and procedures related to bullying emboldened students, including O. D., A. M., and J.F., to continue bullying vulnerable students, including N.M.

96. Upon information and belief, students at Northampton Highschool were aware that they would not be punished for bullying and harassing vulnerable students, including N.M., due to Defendant's unwritten policy of not investigating such claims.

97. Defendant's unwritten policy of downgrading and misclassifying incidents of bullying as "peer on peer conflict" encouraged students to continue harassing, bullying, and discriminating against other students, including N.M.

### COUNT I
### Jane Doe, PR of the Estate of N.M v. City of Northampton
### *Negligence*

98. Plaintiff restates and realleges the assertions contained in paragraphs 1-97 of this Complaint, and incorporate them by reference herein.

99. Defendant, City of Northampton, has a non-delegable duty to assure the safety of its students.

100.    Defendant, City of Northampton, made a specific, written, assurance of safety to the Plaintiff on September 19, 2019, through the implementation of N.M's Safety Plan.

101.    Despite the specific assurance of safety, Defendant, City of Northampton, failed to keep N.M. safe.

102.    Defendant, City of Northampton, breached its non-delegable duty by committing the following negligent acts or omissions including, but not limited to:

    a.    Negligently failing to follow ministerial policies and procedures related to bullying and harassment;

    b.    Negligently failing to provide a safe environment for students entrusted to its case;

    c.    Negligently failing to follow the safety plan in place for N.M., which allowed the bullying and physical assaults to continue

    d.    Negligently failing to supervise its students; and

    e.    Such other negligent and improper actions as may be discovered in the further investigation and pre-trial discovery of this claim.

103.    As a direct result of the aforementioned negligence, the minor Plaintiff, sustained personal injuries.

104.    The Plaintiff has fulfilled all conditions precedent to the bringing of this cause of action.

105.    On January 27, 2022 the Plaintiffs made a timely written demand for relief upon the Defendant, City of Northampton, in accordance with M.G.L. c. 258 §4. A copy of said demand is attached hereto as Exhibit C.

WHEREFORE, the Plaintiff, Jane Doe, as the Personal Representative of the Estate of N.M. prays for judgment against the Defendant, City of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorneys fees, and such other and further relief as the Court may deem just and proper.

### COUNT II
**Jane Doe, PR of the Estate of N.M v. City of Northampton**
***Negligent Infliction of Emotional Distress***

106.    Plaintiff restate and reallege the assertions contained in Paragraphs 1-105 of this Complaint, and incorporate them by reference herein.

107.    As a result of Defendant, City of Northampton's negligence, the minor Plaintiff suffered emotional distress.

108.    A reasonable person would have suffered emotional distress under the circumstances in which the minor Plaintiff suffered emotional distress.

WHEREFORE, the Plaintiff, Jane Doe, as the Personal Representative of the Estate of N.M. prays for judgment against the Defendant, City of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorneys fees, and such other and further relief as the Court may deem just and proper.

## COUNT III
### Jane Doe, PR of the Estate of N.M v. City of Northampton
### *Intentional Infliction of Emotional Distress*

109. Plaintiff restates and realleges the assertions contained in Paragraphs 1-108 of this Complaint, and incorporate them by reference herein.

110. Defendant, City of Northampton's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, to wit:

    a. Allowing a student to take a picture of a teacher and then sending it to the minor Plaintiff with a caption stating: "she hates you too."

    b. Intentionally downplaying and misclassifying bullying and racial harassment as "peer on peer" conflict in order to avoid its duties to investigate, implement safety plans, and report any civil rights violations, including racial harassment and discrimination;

    c. Intentionally lying to Department of Children and Families that the Plaintiffs never reported incidents of bullying;

    d. Intentionally lying to Department of Children and Families that the minor Plaintiff was the aggressor;

    e. Retaliating again the minor Plaintiff after the implementation of the Safety Plan in 2019 by suspending her after incidents in which she was being bullied;

    f. Telling the minor Plaintiff that she seemed to have bad days when she wore fake eyelashes, but that the school understood those were "cultural" for her; and

    g. Such other intentional and improper actions as will be discovered during the course of discovery.

111. As a result of that conduct, the minor Plaintiff suffered severe emotional distress which required counseling and other medical treatment.

112.	Defendant, City of Northampton, should have known that the minor Plaintiff would suffer emotional distress as a result of the conduct described herein.

WHEREFORE, the Plaintiff, Jane Doe, as Personal Representative of the Estate of N.M., prays for judgment against the Defendant, City of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorneys fees, and such other and further relief as the Court may deem just and proper.

## COUNT V
### Jane Doe, PR of the Estate of N.M v. City of Northampton
### *Violation of 42 U.S.C. §1983 & 14th Amendment*

113.	Plaintiff restates and realleges the assertions contained in Paragraphs 1-112 of this Complaint, and incorporate them by reference herein.

114.	The defendant City developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of the minor Plaintiff, to wit:

    a.	Implementing a policy of downplaying and misclassifying incidents of bullying as "peer on peer conflict" in order to avoid its duties to investigate, implement safety plans, and report any civil rights violations, including racial harassment and discrimination;

    b.	Failing to implement policies and procedures to prevent racial discrimination, harassment, and bullying within its public schools, including Northampton High School;

    c.	Failing to train its employees to properly investigate allegations of racial discrimination, harassment, and bullying of students within the public school district, including Northampton High School.

115.	The above-described policies and customs demonstrated a deliberate indifference on the part of policymakers of Defendant, City of Northampton, and were the cause of a violation of minor Plaintiff's rights alleged herein.

116.	Upon information and belief, the above-described policies and customs disproportionately affected persons of color, including the minor Plaintiff.

117.	The conduct of Defendant shocks the consciousness, is arbitrary and caprice.

118.	Defendant, City of Northampton, directly or indirectly, approved or ratified the unlawful and deliberate conduct of its own employees.

119.    As a direct and proximate cause of Defendant, City of Northampton's actions, the minor Plaintiff suffered physical and emotional injuries.

WHEREFORE, the Plaintiff, Jane Doe, as Personal Representative of the Estate of N.M., prays for judgment against the Defendant, City of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorneys fees, and such other and further relief as the Court may deem just and proper.

## COUNT VI
### Jane Doe, PR of the Estate of N.M v. City of Northampton
*Violation of Title VI of the Civil Right Act of 1964*

120.    Plaintiff, repeats and realleges Paragraphs 1 through 119 of this Complaint and incorporates them by reference herein.

121.    Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, provides: "No person in the United States, shall, on the ground of race, color, or national original, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

122.    Defendant, City of Northampton, is a municipality in the Commonwealth of Massachusetts. On information and belief, the City of Northampton receives federal funding from the Department of Education and other federal agencies. As a recipient of federal financial assistance, the City of Northampton is required to conduct its activities in a non-discriminatory manner pursuant to Title VI of the Civil Rights Act of 1964.

123.    Defendant, City of Northampton's failure to investigate racial discrimination, harassment, and bullying among its public schools, including Northampton High School discriminates against individuals based on race, as described in this Complaint.

124.    Furthermore, the actions of Defendant's employees, including but not limited to Malvezzi, who made statements to the decedent concerning her "culture", discriminated against individuals based on race, as described in this Complaint.

125.    Defendant has acted with discriminatory intent or purpose in failing to investigate allegations of rational discrimination, harassment, and bullying.

126.    The City of Northampton's unlawful discrimination in violation of 42 U.S.C. §200d has caused the minor Plaintiff, N.M. physical harm.

WHEREFORE, the Plaintiff, Jane Doe, as Personal Representative of the Estate of N.M., prays for judgment against the Defendant, City of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorneys fees, and such other and further relief as the Court may deem just and proper.

## COUNT VII
### Jane Doe, PR of the Estate of N.M v. City of Northampton
### *Retaliation – First Amendment of the United States Constitution and Article 16 of the Massachusetts Declaration of Rights*

127.    The Plaintiff repeats and realleges Paragraphs 1-126 of this Complaint and incorporates them by reference herein.

128.    The minor Plaintiff, N.M.'s right to free speech was chilled by Defendant, City of Northampton's reaction to the bullying, harassment, and discrimination N.M. faced, as well as the City's intentional decisions to (1) tell DCF that N.M. was the aggressor in all of the reported situations; and (2) punish and suspend N.M. after a Safety Plan was implemented and she continued to complain of, and experience, bullying.

129.    The minor Plaintiff, N. M. was unable to fully and freely communicate to teachers, administrators and amongst her peers while at school due to fear of physical, verbal, and psychological attacks due to defendant's actions and their failure to protect N.M.

130.    In particular, the Defendant was advised of each instance of abuse and failed to: (1) properly investigate the matters; (2) take action to prevent additional; (3) protect N.M. from the abuse, all of which was in violation of her First Amendment rights and rights under Article 16 of the Massachusetts Declaration of Rights.

131.    As a result of this breach and infringement of her First Amendment and Article 16 rights, N.M. suffered damages, including but not limited to extreme emotional harm and psychological ailments requiring treatment, physical pain and suffering, and ultimately, had to withdraw from school, all of which entitle N.M. to compensatory and punitive damages.

WHEREFORE, the Plaintiff, Jane Doe, as Personal Representative of the Estate of N.M., prays for judgment against the Defendant, City of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorneys fees, and such other and further relief as the Court may deem just and proper.

## COUNT VIII
### Jane Doe, PR of the Estate of N.M v. City of Northampton
*Wrongful Death*

132.     The Plaintiff repeats and realleges Paragraphs 1 through 131 of this Complaint and incorporates them by reference herein.

133.     As a direct and proximate result of the Defendant, City of Northampton's conduct, the Plaintiff's decedent, N.M., died from her above-described injuries on or about January 30, 2020.

134.     At all times herein relevant, the Plaintiff, Jane Doe, was the mother and next of kin of the decedent, N.M.

135.     At all times herein relevant, the Plaintiff, Jane Doe, as well as other issue of the Plaintiff's decedent, N.M., were dependent upon the decedent for her companionship, comfort, society, support, love, and affection, and could reasonably expect to receive the benefit of her future services, protection, care, assistance, guidance, counsel, advice, and support.

136.     The Plaintiff, Jane Doe, as the next of kin of the decedent, N.M., as well as other issue of the Plaintiff's decedent, have also expended reasonable and necessary sums for medical treatment and funeral and related services, and suffered other pecuniary losses as a result of the death N.M.

137.     As a result of the wrongful death of the decedent, the Plaintiff, Jane Doe as well as other issue of the decedent, have sustained damage.

138.     This Count for wrongful death is brought by the Plaintiff, Jane Doe, as the Personal Representative of the Estate of N.M., for the use and benefit of the decedent', N. M.'s, next of kin, pursuant to M.G.L. ch. 229 sec. 2.

WHEREFORE, the Plaintiff, Jane Doe, as the Personal Representative of the Estate of N.M., prays for judgment against the Defendant city of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorney's fees, and such other and further relief as the Court may deem just and proper.

## COUNT IX
### Jane Doe, PR of the Estate of N.M v. City of Northampton
*Punitive Damages*

139.     The Plaintiff repeats and realleges Paragraphs 1 through 138 of this Complaint and incorporates them by reference herein.

140.     At all times described herein, the Defendant's employees acted in a wanton, reckless, and grossly negligent manner resulting in the decedent, N.M.'s, death.

141.     By virtue of the above, the Defendant, City of Northampton is liable to the decedent's Estate for punitive damages in an amount of not less than Five Thousand ($5,000.00) Dollars pursuant to M.G.L. ch. 229 sec. 2.

WHEREFORE, the Plaintiff, Jane Doe, as the Personal Representative of the Estate of N. M., prays for judgment against the Defendant City of Northampton, in a reasonable amount, together with interest, costs, expert witness fees, attorney's fees, and such other and further relief as the Court may deem just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Dated: 1/26/23

Respectfully submitted,
The Plaintiff,

Robert A. DiTusa, Esq. (BBO # 649218)
Alekman DiTusa, LLC
1550 Main Street, Suite 401
Springfield, MA 01103
Tel. (413) 781-0000
Fax (413) 827-0266
robert@alekmanditusa.com

Laura D. Mangini, Esq. (BBO#684620)
Alekman DiTusa, LLC
1550 Main Street, Suite 401
Springfield, MA 01103
Tel. (413) 781-0000
Fax (413) 827-0266
laura@alekmanditusa.com

CARMEN L. DURSO, ESQUIRE
BBO # 139340
Law Office of Carmen L. Durso
175 Federal Street, Suite 505
Boston, MA 02110-2211
617-728-9123
carmen@dursolaw.com

# EXHIBIT B

175 Federal Street ✦ Suite 505 ✦ Boston, MA 02110-2211

Carmen L. Durso

Rosanne Zuffante
*Paralegal*

*Of Counsel*
Mark F. Itzkowitz
Sara Elizabeth Burns
Stanley J. Spero

January 27, 2022

**BY HAND DELIVERY**

Mayor Gina-Louise Sciarra
City of Northampton
Chair, Northampton School Committee
210 Main St.
Northampton, MA 01060

## NOTICE OF CLAIM PURSUANT TO G.L. CHAPTER 258

Re:    Jane Doe, Personal Representative of the Estate of N    M
Vs.    Northampton Public Schools, City of Northampton

Dear Mayor Sciarra:

These are claims made under G.L. c. 258 by Jane Doe, Personal Representative of the Estate of N    M, for personal injuries and death resulting from the negligence of employees of the City of Northampton and the Northampton School District.

N. H. was disciplined for actions stemming from her being the victim of bullying and physical assault, based upon both her gender and her race, while she was a student at Northampton High School. The disciplinary actions taken against N. M. in 2019 placed her in a more vulnerable position to additional bullying, and directly contributed to N. M. 's suicide on January 30, 2020.

Because N.M. had anxiety issues, she was placed in "The Academy" section of Northampton High School, an area reserved for children with more severe behavioral issues. This was an entirely inappropriate placement, an affirmative action which placed N. M. in a worse position than she would have been in, and was effected by misrepresenting to her mother the nature of the educational experience there.

Further, Northampton Public Schools made specific assurances of safety by providing a detailed Safety and Supervision Plan, which is attached, marked "A." During the time this Plan was in effect in late November, 2019, N. M. was again subjected to a physical assault on school grounds, and was caused to suffer significant physical and emotional harm.

This letter serves as notice of my client's intention to file a Complaint in Hampshire County Superior Court, alleging disciplinary actions by Northampton Public Schools which caused the plaintiff significant harm, and the negligent failure of those personnel to provide the protection promised her under the Safety and Supervision Plan.

Based upon the records presently available to us, on September 9, 2019, when she was 16 years old, N.M    was the victim of a savage physical attack on the premises of Northampton High School. This attack left her with a concussion, and severe emotional damage, for which she required extensive hospitalization. She returned to Northampton High School in spite of her significant injuries, but ten days later was involved in a verbal altercation with a staff member. This altercation resulted in accidental injuries to that staff member and Navaya being removed and suspended from school.

This decision to continue to punish N.M   , who not two weeks prior had been physically attacked on school grounds, leaving her seriously injured, greatly exacerbated Navaya's mental health concerns and placed her in significantly more danger of self harm than before the school's actions, and subjected her to more serious and pervasive racial harassment.

The staff at Northampton Public Schools continued to punish N    for conduct resulting from her injuries during and in the aftermath of the September 9th assault, including instances in late October, 2019 and late November, 2019. Despite the specific plan requiring "intentional adult supervision of N.M    throughout the school day," she was again subjected to a vicious physical assault on November 20, 2019.

The employees of Northampton High School first failed to protect Navaya from being bullied, despite having been warned that she was a target, then they disciplined her instead of providing the requisite support for a victim of such severe trauma. By acting as they did they reinforced the emotional damage caused by N.M    bullies and it led to her suicide on January 30, 2020.

For these reasons, Northampton High School, and the City of Northampton, are liable to the plaintiff for damages suffered as a result of their affirmative acts and failure to follow through on their specific assurances of safety.

The plaintiff has not determined at this time all of the additional persons to whom she intends to give notice under this statute.

This letter is intended to satisfy the requirements of Massachusetts General Laws, Chapter 258, §4, and you are required to respond within one-hundred and eighty (180) days.

This letter is written without the benefit of discovery, and is not intended to be a complete and exhaustive statement of the plaintiff's claims.

I hope to be able to work with you to resolve this claim without the need to enter into costly and time consuming litigation. Thank you for your courtesy and your prompt attention to this matter.

Very truly yours,

Carmen L. Durso

CLD/SF
Enc.

cc:     Layla G. Taylor, Legal Counsel
        Northampton Public School District
        **BY HAND DELIVERY**

\NPS-c258-127-22

## Safety and Supervision Plan for NM

**PURPOSE:**

*N₁H    was physically assaulted at school on Monday, September 9, 2019. N₁.M   is also named as a potential victim in a bullying case that is currently under investigation. The school is in joint agreement with N₁M   , her mother Jane(M)and the School Resource Officer that intentional adult supervision of N₁M₁ throughout the school day is a necessary step in securing her physical and emotional safety at school.*

**DURATION:** September 10, 2019 - TBD

**PROGRAMMING - THE ACADEMY AT NHS:**

N₁M·   is a student in The Academy at NHS. The Academy is an alternative learning program serving students requiring additional social/emotional supports and skills in order to meet their academic potential. The program is staffed by three special education teachers, an adjustment counselor and two Educational Support Professionals. The typical student to staff ratio is 4:1. This program is able to monitor the safety plan, offer in-the-moment- supports to N₁M   and provide access to a support room that offers quiet space for de-escalation and reflection.

**DAILY SUPERVISION SCHEDULE:**

**Arrival**

N₁M.   and Jane will determine if N₁M .   will be dropped off and walk unescorted into the building or if Jane will accompany her into the main office each day. N₁M₀  : will wait in the main office while an office secretary (Jayne or Sandy) calls/radios Academy staff to inform them that N₁M.  has arrived. A staff person (Paula or Ed) will report to the office and walk N₁M₁, up to the Academy.

**Block A**

The staff member (Paula or Ed) will walk N₁M   to her Block A English class (Rm 309).

**Block B**

There is no transition to Block B History (also in Rm 309). The students have a break during Block B that aligns with a passing period on the typical high school bell schedule. N₁M,   will stay in the classroom during the break.

**Block C**

N₁M·   : Block C Academic Support class is in the adjacent classroom (Rm 330). The passing time between these blocks is brief and direct. N₁M .   will move from one classroom to the next, without leaving the Academy hallway.

**Lunch**

*N₁H. ,   has two options for a supervised lunch. N₁M.   ı must select and commit to one option (to the extent possible)  in order to avoid miscommunication or confusion.*

**Option A: Lunch in the Cafeteria**
At the end of Block C, a staff member (rotating) from the Academy will escort N: M ·  to the cafeteria and will remain in the cafeteria for the duration of the lunch period.

**Option B: Lunch in the Academy**
At the end of Block C, N: M  ı will stay and eat in the classroom supervised by an Academy staff person (rotating).  If N. M  needs to purchase lunch, the staff will escort her to the cafeteria and back upstairs to the classroom.

## Block D
When lunch ends, the same staff member (rotating) will walk N: M   to her Block D Human Anatomy class (Rm 226).  An ESP (Jenni) who works with the Academy is assigned to the Human Anatomy class to provide support to the Academy students in that class.

## Flex
*N:      has two options for a supervised flex time.  N: M,    must select and commit to one option (if she earns the privilege) in order to avoid miscommunication or confusion.*

**Option A: Flex in the Gym**
At the end of Block D, a staff member (Jenni) will escort N. M · · to the gym. The gym is supervised by staff for the duration of flex time. An Academy staff person (rotating) will escort N. M. from the gym to her Block E Math class (Rm 330) when flex is over.

**Option B: Flex in the Academy**
At the end of Block D, N. M  · will stay in the classroom supervised by an Academy staff person (rotating).  When flex ends, N: M . will already be in her Block E Math classroom (Rm 330).

## Block E
N: M . Block E Math class is the last block of the day.  N· M · will remain in the classroom until the final bell rings and will wait for Academy staff (Paula or Ed) to escort her down to the main office for dismissal.

## Dismissal
N. M · ⁄ill be escorted by Academy staff (Paula or Ed) to the main office at the end of the school day.  N. · M _ and Janu will determine if N· M ı will exit the building unescorted or if Jan or a designee) will come in to the main office each day to accompany N.· M . off school grounds.

## Breaks During Class Time:
- N: M . ı is expected to stay in class and minimize breaks outside of the classroom.
- N. .M . will use alternative coping strategies (i.e. drawing, coloring) as opposed to taking walking breaks during class time.
- If N. M. ı requires a break, she will be escorted by an Academy staff member.

- N: M. will use the single-stall restroom in the Academy hallway (as is possible). She will ask permission to leave the classroom to use the restroom during Blocks A, B, C & E. If N. M. requests to use the restroom during Block D Human Anatomy, an Academy staff member (Jenni, Melissa or Ed) will escort her to the single-stall restroom in the Academy hallway and then back to class.

**ADDITIONAL INFORMATION:**

In the event that a designated staff person is absent for all or part of the day, Ms. Power-Greene, with the support of Ms. Malvezzi, as needed, will make alternative coverage arrangements.

Whenever a designated staff person is temporarily unavailable to assist or supervise N: M. as described, another Academy staff member will fill in.

If staffing shortages pose a barrier to meeting the supervision needs of N: M., Ms. Malvezzi should be notified immediately so the issue can be remedied.

**NM EXPECTATIONS:**

Staff are only able to appropriately supervise N. M. to the extent that she cooperates. N: M. is able and expected to act responsibly and in accordance with the plan.

- N: M. will not exit a supervised location without informing staff. N: M. will wait in the office to be escorted to Block A will wait in her Block E class until she can be escorted by staff to the office at the end of the day.
- N: M. will not engage in any communication with the identified aggressors in the physical assault or the potential aggressors in the active bullying investigation. This includes any face-to face interactions, phone communication, and any communication via social media both in and outside of school.
- N: M. will immediately report any attempts from the identified or potential aggressors to communicate or interact with her in any way. Incidents at school will be reported to a staff member, who will immediately alert Ms. Malvezzi. Ms. Malvezzi will respond appropriately and will also inform Jane Doe and the School Resource Officer. N. M. will report any incidents that occur outside of school to her mother. Jane Doe will then share the information with Ms. Malvezzi and the School Resource Officer.

**PLAN DISTRIBUTION:**

|  |  |  |
|---|---|---|
|  | Lori Vaillancourt, Interim Principal | Melissa Power-Greene, Academy Special Education Teacher |
| Academy Special Education Teacher | Celeste Malvezzi, Associate Principal | Elizabeth Skelley, |
| Academy Special EducationTeacher | Kara Sheridan, Associate Principal | Jennifer Mae Viets, |
| Adjustment Counselor | Josh Wallace, School Resource Officer | Ed Stone, Academy |
|  | Jane Doe, Parent | Paula Rigano-Murray, Academy ESP |
|  | N M, Student | Jennifer Robinson, Academy ESP |
| English Teacher | Jayne Reeves, Clerical Staff | Jamison Isler, Academy |

3

Teacher                                    Sandra Bombard, Clerical Staff    Allison Keefe, Academy Math

                                           Yammira Santos, Clerical Staff     Donna Canuel-Browne,
Human Anatomy Teacher

                                           Dena McCabe, Administrative Assistant    David Messing,
Associate Director of Student Services

                                           Sheila Deam, School Counselor    Kelley Knight, Outreach Social
Worker

                                           Candy Goyette, School Nurse     Dr. John Provost,
Superintendent of Schools


Any questions or concerns about this Supervision Plan, the implementation of the Plan, and/or the safety and well-being of NM should be immediately directed to Celeste Malvezzi.

4

# EXHIBIT C



# Safety and Supervision Plan for NM

**PURPOSE:**
N₁H   was physically assaulted at school on Monday, September 9, 2019. N₁ M  is also named as a potential victim in a bullying case that is currently under investigation. The school is in joint agreement with N. M  , her mother Jane(M)and the School Resource Officer that intentional adult supervision of NₒM. throughout the school day is a necessary step in securing her physical and emotional safety at school.

**DURATION:** September 10, 2019 - TBD

**PROGRAMMING - THE ACADEMY AT NHS:**
N₁M· ₁is a student in The Academy at NHS. The Academy is an alternative learning program serving students requiring additional social/emotional supports and skills in order to meet their academic potential. The program is staffed by three special education teachers, an adjustment counselor and two Educational Support Professionals. The typical student to staff ratio is 4:1. This program is able to monitor the safety plan, offer in-the-moment- supports to N₁M   and provide access to a support room that offers quiet space for de-escalation and reflection.

**DAILY SUPERVISION SCHEDULE:**

**Arrival**
N₁M.  and Jane will determine if N₁M . will be dropped off and walk unescorted into the building or if Jane will accompany her into the main office each day. N₁Mₒ : will wait in the main office while an office secretary (Jayne or Sandy) calls/radios Academy staff to inform them that N. M. has arrived. A staff person (Paula or Ed) will report to the office and walk N.M., up to the Academy.

**Block A**
The staff member (Paula or Ed) will walk N.M   to her Block A English class (Rm 309).

**Block B**
There is no transition to Block B History (also in Rm 309). The students have a break during Block B that aligns with a passing period on the typical high school bell schedule. N₁M,   will stay in the classroom during the break.

**Block C**
N.M· : Block C Academic Support class is in the adjacent classroom (Rm 330). The passing time between these blocks is brief and direct. N₁M . will move from one classroom to the next, without leaving the Academy hallway.

**Lunch**
N.M. ,  has two options for a supervised lunch. N₁M. ₁ must select and commit to one option (to the extent possible) in order to avoid miscommunication or confusion.

**Option A: Lunch in the Cafeteria**
At the end of Block C, a staff member (rotating) from the Academy will escort N: M̶ to the cafeteria and will remain in the cafeteria for the duration of the lunch period.

**Option B: Lunch in the Academy**
At the end of Block C, N: M̶ will stay and eat in the classroom supervised by an Academy staff person (rotating). If N. M̶ needs to purchase lunch, the staff will escort her to the cafeteria and back upstairs to the classroom.

**Block D**
When lunch ends, the same staff member (rotating) will walk N: M̶ to her Block D Human Anatomy class (Rm 226). An ESP (Jenni) who works with the Academy is assigned to the Human Anatomy class to provide support to the Academy students in that class.

**Flex**
*N: has two options for a supervised flex time. N M̶, must select and commit to one option (if she earns the privilege) in order to avoid miscommunication or confusion.*

**Option A: Flex in the Gym**
At the end of Block D, a staff member (Jenni) will escort N: M̶ · to the gym. The gym is supervised by staff for the duration of flex time. An Academy staff person (rotating) will escort N: M̶. from the gym to her Block E Math class (Rm 330) when flex is over.

**Option B: Flex in the Academy**
At the end of Block D, N: M̶ · will stay in the classroom supervised by an Academy staff person (rotating). When flex ends, N: M̶ . will already be in her Block E Math classroom (Rm 330).

**Block E**
N: M̶. Block E Math class is the last block of the day. N· M̶ · will remain in the classroom until the final bell rings and will wait for Academy staff (Paula or Ed) to escort her down to the main office for dismissal.

**Dismissal**
N: M̶ · will be escorted by Academy staff (Paula or Ed) to the main office at the end of the school day. N. · M̶ and Janu will determine if N· M̶ i will exit the building unescorted or if Jan or a designee) will come in to the main office each day to accompany N. · M̶ . off school grounds.

**Breaks During Class Time:**
- N M̶ . i is expected to stay in class and minimize breaks outside of the classroom.
- N. M̶ will use alternative coping strategies (i.e. drawing, coloring) as opposed to taking walking breaks during class time.
- If N M̶. a requires a break, she will be escorted by an Academy staff member.

- N. M. i will use the single-stall restroom in the Academy hallway (as is possible). She will ask permission to leave the classroom to use the restroom during Blocks A, B, C & E. If N. M. requests to use the restroom during Block D Human Anatomy, an Academy staff member (Jenni, Melissa or Ed) will escort her to the single-stall restroom in the Academy hallway and then back to class.

**ADDITIONAL INFORMATION:**

In the event that a designated staff person is absent for all or part of the day, Ms. Power-Greene, with the support of Ms. Malvezzi, as needed, will make alternative coverage arrangements.

Whenever a designated staff person is temporarily unavailable to assist or supervise N. M. as described, another Academy staff member will fill in.

If staffing shortages pose a barrier to meeting the supervision needs of N. M. i, Ms. Malvezzi should be notified immediately so the issue can be remedied.

**NM EXPECTATIONS:**

Staff are only able to appropriately supervise N. M. i to the extent that she cooperates. N. M. is able and expected to act responsibly and in accordance with the plan.

- N. M. will not exit a supervised location without informing staff. N. M. will wait in the office to be escorted to Block A will wait in her Block E class until she can be escorted by staff to the office at the end of the day.
- N. M. will not engage in any communication with the identified aggressors in the physical assault or the potential aggressors in the active bullying investigation. This includes any face-to-face interactions, phone communication, and any communication via social media both in and outside of school.
- N. M. will immediately report any attempts from the identified or potential aggressors to communicate or interact with her in any way. Incidents at school will be reported to a staff member, who will immediately alert Ms. Malvezzi. Ms. Malvezzi will respond appropriately and will also inform Jane Dol and the School Resource Officer. N. M. will report any incidents that occur outside of school to her mother. Jane Dol will then share the information with Ms. Malvezzi and the School Resource Officer.

**PLAN DISTRIBUTION:**

Lori Vaillancourt, Interim Principal      Melissa Power-Greene, Academy Special Education Teacher

Celeste Malvezzi, Associate Principal      Elizabeth Skelley, Academy Special Education Teacher
Kara Sheridan, Associate Principal      Jennifer Mae Viets, Academy Special Education Teacher

Josh Wallace, School Resource Officer   . Ed Stone, Academy Adjustment Counselor

Jane Dol...., Parent      Paula Rigano-Murray, Academy ESP
N . M. , Student  Jennifer Robinson, Academy ESP
Jayne Reeves, Clerical Staff      Jamison Isler, Academy English Teacher

3

Sandra Bombard, Clerical Staff    Allison Keefe, Academy Math

Teacher

Yammira Santos, Clerical Staff    Donna Canuel-Browne,

Human Anatomy Teacher

Dena McCabe, Administrative Assistant    David Messing,

Associate Director of Student Services

Sheila Deam, School Counselor    Kelley Knight, Outreach Social

Worker

Candy Goyette, School Nurse    Dr. John Provost,

Superintendent of Schools

Any questions or concerns about this Supervision Plan, the implementation of the Plan, and/or the safety and well-being of NM should be immediately directed to Celeste Malvezzi.



2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| | | COUNTY Hampshire Superior Court (Northhampton) |

| Plaintiff Jane Doe, as Personal Rep. of the Estate of N.M | Defendant: City of Northampton |
|---|---|
| ADDRESS: | ADDRESS: 210 Main Street |
| | Northampton, MA 01060 |
| | |
| Plaintiff Attorney: Laura D. Mangini, Esq. | Defendant Attorney: |
| ADDRESS: 1550 Main Street, Suite 401 | ADDRESS: |
| Springfield, MA 01103 | |
| | |
| BBO: 684620 | BBO: |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 | Tortious Activity Involving City | A | ☒ YES ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A? ☐ YES ☒ NO          Is there a class action under Mass. R. Civ. P. 23? ☐ YES ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses _____

    2. Total doctor expenses _____

    3. Total chiropractic expenses _____

    4. Total physical therapy expenses _____

    5. Total other expenses (describe below) _____

    *HAMPSHIRE SUPERIOR COURT*

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date          *JAN 27 2023* _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses          *HARRY JEKANOWSKI, JR.* _____
    *CLERK/MAGISTRATE*

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) $2,500,000.00

TOTAL (A-F): $2,500,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

The minor Plaintiff was subjected to 1 1/2 years of bullying, racial harassment, and discrimination which caused her great emotional distress, and ultimately caused her to take her own life.

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Unrepresented Plaintiff: X _____          Date: 1/25/23

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X _____          Date: 1/25/23