UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANE DOE, Personal Representative | ) | |
| Of the ESTATE OF N. M. | ) | |
| Plaintiff | ) | 3:23-CV-10358-MGM |
| vs. | ) | |
| | ) | **LEAVE TO FILE MEMORANDUM IN** |
| | ) | **EXCESS OF 20 PAGES ALLOWED ON** |
| | ) | **APRIL 13, 2023 [DKT. NO. 19]** |
| | ) | |
| CITY OF NORTHAMPTON | ) | |
| Defendant | | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

I.      INTRODUCTION

NOW COMES the Plaintiff, Jane Doe, as the Personal Representative of the Estate of N.M.,

and respectfully requests this Honorable Court deny Defendant, City of Northampton's ("City"

or "Defendant"), Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), as

Plaintiff's claims fall within the statute of limitations and Plaintiff's Complaint sets forth in

sufficient detail factual support for both the state and federal claims.[1] In further support of this

Opposition, Plaintiff states the following:

II.      RELEVANT FACTUAL BACKGROUND

In September of 2018, fifteen (15) year old N.M. was a freshman at Northampton High

School.[2] ¶27. Prior to the start of the school year, Jane Doe, N.M.'s mother, met with

---

[1] Plaintiff concedes that the City of Northampton cannot be held liable for intentional infliction of emotional distress under the Massachusetts Tort Claims Act, or for punitive damages under the Wrongful Death Act, and therefore, agrees to dismiss Count III and Count IX of her complaint.

[2] All factual assertions are taken directly from Plaintiff's Complaint and Demand for Jury Trial, and will be referenced as ¶_.

Northampton Public High School officials, including Assistant Principal Celeste Malvezzi ("Malvezzi") and Adjustment Counselor Andrea Leydon ("Leydon"), to discuss N.M.'s Individualized Education Plan ("IEP"). ¶¶24-25. During this meeting, Jane Doe also advised officials that N.M. was being bullied by a group of students. ¶26.

Throughout the 2018-2019 school year, N.M. continued to be subjected to severe and pervasive bullying and harassment by Northampton High School students. ¶¶28-51. This included racial remarks, comments about N.M.'s appearance, and threats and intimidation by groups of students who would gather in N.M.'s path of travel and physically gesture towards her as if they were going to attack her. ¶¶29-32. These incidents were reported to Northampton High School by both Jane Doe and N.M. ¶34. On September 14, 2018, Malvezzi, who was responsible for the investigation of complaints of bullying, harassment, and retaliation, confirmed in a voicemail, Doe, that she was aware of the bullying, and that it seemed to stem from students lurking outside of N.M.'s math class. ¶¶14, 35. Despite the confirmation of bullying, Malvezzi did not undertake any of the mandatory steps to investigate the allegations. Nor did she implement a safety plan. ¶¶36-39.

Jane Doe continued to meet with N.M.'s IEP team throughout the school year. At all of these meetings, Doe informed Malvezzi that N.M. was still experiencing pervasive bullying. Doe also reported that N.M. was feeling lonely and was terrified of attending school because she was afraid of being attacked. ¶¶40, 47. Doe continued to request a safety plan be implemented to protect N.M., as required under the City's bullying policies. ¶50.

In May of 2019, N.M. attempted to take her own life. During her subsequent hospitalizations, she reported that she was fearful to return to school due to the bullying, and that she thought it was better off to die. ¶52. The Department of Children and Families ("DCF") launched an

investigation as a result of the attempted suicides. As part of that investigation, DCF spoke with Leydon. ¶53. Leydon intentionally lied to DCF about the nature of bullying N.M. experienced, instead alleging it was "peer on peer conflict." ¶54. Leydon lied to DCF, stating neither Jane Doe nor N.M. reported the incidents of bullying. ¶57. Leydon lied to DCF, stating N.M. was the aggressor. ¶58.  When DCF confronted Leydon about the misrepresentations, Leydon reported "she was only doing what she had been told to do." ¶59.

N.M. returned to Northampton Public High School in the fall of 2019. When she returned, she was placed into a special program known as "the Academy." The program was to provide N.M. with special accommodations and protect her from bullying. ¶62. On September 9, 2019, while at school, N.M. was physically assaulted by two students. ¶64. The assault was videotaped and disseminated across social media. ¶65. Following the assault, Malvezzi finally provided N.M. with a Safety Plan. ¶68. Despite the Safety Plan, N.M. continued to experience pervasive and severe bullying. ¶¶72-73, 76. She was physically attacked at school a second time in November of 2019. ¶81.

Following the second attack, Jane Doe pulled N.M. out of school. ¶89. In December of 2019, N.M. reported that it was unfair that she could not attend school, and that she was the only one suffering because the school could not protect her. ¶90. On January 30, 2020, N.M. broke down crying, telling her mother that she could not understand why the school could not keep her safe. ¶91. Later that night, N.M. tragically took her own life. ¶ 92.

III.   ARGUMENT

**A. The Applicable Statute of Limitations for Both State and Federal Claims is Three Years After the Minor Plaintiff Would Have Turned Eighteen, or September 1, 2024.**

Defendant argues that all claims should be dismissed because they are outside the applicable statute of limitations. See Def. Motion to Dismiss, §I.A. However, Defendant fails to account for the fact that causes of action are brought on behalf of a minor Plaintiff. Therefore, the applicable statute of limitations is three years after the N.M. would have reached the age of majority, or September 1, 2024. G.L. c. 260 §7.  See also, Hernandez v. City of Bostin, 394 Mass. 45 (1985)(holding that G.L. c. 260, §7 is the appropriate statute of limitations to be applied to cases involving a municipality).

**B. Plaintiff's G.L. c. 258, §4 Presentment Letter Is Timely.**

Defendant argues that Plaintiff's state claims must be dismissed because Plaintiff did not present the claims within the requisite two-year time period under G.L. c. 258, §4. First, the two-year presentment requirement should be tolled due to the Supreme Judicial Court's COVID-19 orders, and the Court's decision in Shaw's Supermarket, Inc. v. Melendez, 488 Mass.338 (2021). Moreover, even if this Court were to find that the presentment requirement was not tolled, Plaintiff's presentment of the wrongful death claim was within the two-year time period required under G.L. c. 258.

Pursuant to its superintendence powers and rulemaking authority, the Supreme Judicial Court issued a variety of orders regarding court operation in response to the COVID-19 pandemic. In the Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, the Court specifically extended "all deadlines set forth in statutes or court rules, standing orders, tracking orders, or

guidelines that expired at any time from March 17, 2020, through June 30, 2020." The order

"sought to safeguard the health and safety of the public, as well as court personnel, while

recognizing the importance to all litigants, and indeed, to all resident of the Commonwealth of an

efficient and functioning judiciary during this unprecedented period." Shaw's Supermarket, 488

Mass. 340-41. "In light of the ongoing State and local restrictions imposed to combat the spread

of COVID-19, and the effect of such restrictions on the ability of attorneys and litigations to

prepare civil claims", this Court should find that the presentment requirement was also extended

105 days, in a similar fashion as the civil Statute of Limitations. Id. at 342, n.3. Therefore, any

claims for negligence and/or negligent infliction of emotional distress from October 15, 2019,

through January 30, 2020, should not be dismissed as untimely.

However, even if the Court were to find that the SJC's COVID-19 orders did not toll the 258

presentment requirements, Plaintiff's claim of wrongful death would still survive. Under 258, §4,

presentment would have had to have been made within two years of N.M.'s death. Fearon v.

Com., 394 Mass. 50, 52 (1985); see also Weaver v. Com., 387 Mass. 43, 45-46 (1982).  Plaintiff

alleges N.M.'s date of death was January 30, 2020. ¶92. Therefore, under the statute,

presentment of the wrongful death claim would have needed to have been made by January 30,

2022. Plaintiff presented the wrongful death claim on January 27, 2022. ¶105. Therefore,

Plaintiff's presentment of the wrongful death claim is timely.

### C. Plaintiff's Complaint Contains Factual Allegations Which Are Sufficient to Support Both Her Federal and State Claims.

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556  U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). This standard "does not demand a high degree of factual specificity, nor

must the plaintiff demonstrate that she is likely to prevail, only that her claims are facially plausible." Harrington v. Lesley University, 554 F.Supp.3d 211, 221 (2021)(quoting Garcia-Catalan v. United States, 734 F.3d 100, 102-103 (1st Cir. 2013). "The Court draws on its 'judicial experience and common sense' in determining whether a claim crosses the plausibility threshold." Harrington v. City of Attleboro, 172 F. Supp. 3d, 337, 341 (2016)(quoting Garcia-Catalan, supra at 103). If there is a choice between plausible interpretations of evidence, "the choice between or among plausible interpretations of the evidence will be a task for the factfinder." Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 46 (1st Cir. 2013). This is especially true "in a wrongful death case, where a fact-deprived personal representative may particularly need an opportunity for discovery." Connerty v. Metropolitan Dist. Comm'n, 398 Mass. 140, 143 (1986); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 (2004); Coughlin v. Dep't of Corrections, 43 Mass. App. Ct. 809, 816 (1997).

1. Plaintiff's Complaint Sufficiently Alleges that the City of Northampton Had a Policy or Custom of Misclassifying Incidents of Bullying as Peer-on-Peer Conflict, which Led to a Violation of N.M.'s Constitutional Rights under 42 U.S.C. §1983.

"To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Parratt v. Taylor, 451 U.S. 527, 535 (1981); Daniels v. Williams, 474 U.S. 327, 330-331 (1986); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). While it is true that "a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents," it may be sued "when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible [for] under §1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, (1978). Simply stated, liability can be imposed on a local government

only where that government's policy or custom is responsible for causing the constitutional violation or injury. Id. at 690-91. Government policy or custom, though, may be established by "a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Thus, "where action is directed by those who establish governmental policy," the municipality may be held liable for that action under § 1983. Id. at 481.

Here, Plaintiff alleges that the City, among other things, maintains a policy of misclassifying incidents of bullying as "peer-on-peer conflict," in direct violation of its own policies and procedures, in order to avoid its duties to investigate; implement safety plans; and report civil rights violations, including racial harassment and discrimination." ¶114. As a result of the City's policy to misclassify incidents of bullying as "peer-on-peer conflict", the City, through its employees, did not properly investigate or implement safety plans for vulnerable students, including N.M., who were exposed to pervasive bullying. ¶¶16-18; ¶35-50; ¶¶ 54-56; ¶71-88. The City's policy to misclassify incidents as "peer-on-peer conflicts" so that they would not be properly investigated or remedied only served to embolden and enable students to continue bullying vulnerable students, including N.M., because the students knew that they would not be punished. ¶¶93-97. Plaintiff further alleged that the City's policy demonstrated a deliberate indifference on the part of policymakers and was the cause of a violation of the minor Plaintiff's rights, namely her 14th Amendment Right to due process, as well as her First Amendment Right to Free Speech. ¶¶114-115. Finally, Plaintiff alleged that the City's policy to misclassify bullying as "peer-on-peer conflict" disproportionately affected persons of color, which also includes N.M. ¶116.

In this case, Plaintiff has sufficiently pled facts to place the City on notice of the

constitutional violations of which she alleges were violated, as well as the City's policy and

customs that led to their deliberate indifference. Therefore, Plaintiff has demonstrated that her

allegations, when taken as true, are facially plausible, and Defendant's Motion to Dismiss Count

V must be denied. While Defendant may have a different interpretation of the facts, which may

be equally plausible, the decision is to be left to the finder-of-fact. Evergreen Partnering Grp.,

Inc. v. Pactiv Corp., 720 F.3d 33, 46 (1st Cir. 2013).

2. Plaintiff's Complaint Sufficiently Alleges the City of Northampton Violated Title VI of
   the Civil Rights Act of 1964, Both When It Failed to Investigate Racially Motivated
   Comments and When Its Employees Made Their Own Racially Motivated Comments
   Towards N.M.

As Defendant concedes, "a school district is liable for intentional discrimination when it has

been 'deliberately indifferent' to teacher or peer harassment of a student." Pollard v. Georgetown

School District, 132 F.Supp.3d 208, 230 (D. Mass. 2015)(quoting Zeno v. Pine Plains Cent. Sch.

Distr., 702 F.3d 655, 665 (2nd Cir. 2012). To establish liability, a plaintiff must demonstrate: "(1)

that he or she was subject to 'severe, pervasive, and objectively offensive harassment … on the

basis of race, color, or national origin; (2) that the harassment caused the plaintiff to be deprived

of educational opportunities or benefits; (3) the funding recipient knew of the harassment; (4) in

its programs or activities; and (5) it was deliberately indifferent to the harassment such that its

response (or lack thereof) is clearly unreasonable in light of the known circumstances." Id.

quoting Thomas v. Springfield School Committee, 59 F.Supp.3d 294, 301 (D. Mass. 2014).  "A

funding recipient is deliberately indifferent to student-on-student harassment when 'the

recipient's response to the harassment or lack thereof is clearly unreasonable in light of the

known circumstances.'" Porto v. Town of Tewksbury, 488 F.3d 67, 72 (D. Mass. 2007)(quoting

Davis v. Monroe County Bd. of Educ, 526 U.S. 629, 644 (1999). "The deliberate indifference

must, at a minimum, cause the students to undergo harassment or make them liable or vulnerable to it." Davis, supra at 645.

Here, Plaintiff alleges that N.M., was bullied for, among other things, her perceived race, color, and national origin. By way of example only, Plaintiff alleges that certain students would tell N.M that she should not have her hair braided a certain way because she was "not black enough." ¶31.[3] Assistant Principal Malvezzi also made comments about N.M.'s race, color, and natural origin, by commenting on N.M.'s "flashy eyelashes", wherein she stated N.M seemed to have more difficultly when she wore them, but that Malvezzi knew they were "cultural" for her. ¶87. Plaintiff also alleges that N.M. was subjected to other racial remarks and bullying. ¶33. These allegations plausibly state that N.M. was the subjected to discrimination because of her color, race, and national origin.

The City was also aware of the racial harassment, as both Jane Doe and N.M. reported these threats to the City. ¶34. The harassment was so pervasive that it deprived N.M. of her educational opportunities and benefits, as demonstrated by the allegations that: in March of 2019, N.M. was not attending school because she was uncomfortable due to the constant bullying and harassment; that she attempted to take her own life twice in May of 2019 because she was afraid to go back to school due to the bullying and harassment; and that Jane Doe removed N.M from Northampton Public High School after November of 2019. ¶¶51, 52, 89.

Finally, Plaintiff has met the threshold to show that the City's response to the racial discrimination was deliberately indifferent. For the first nine (9) months, the City simply did nothing, despite the repeated reports of bullying and harassment to N.M., and by Jane Doe

---

[3] Defendant appears to argue that the remarks contained in ¶31 should not be considered, because A.M. was not associated with either of the physical assaults. See Def. Opp.  p. 15. Despite Defendant's attempts to narrow the facts of this case to two discreet physical assaults, the Complaint demonstrates a pattern of severe and pervasive bullying and harassment, all of which contributed to her tragic death.

during N.M.'s IEP meetings. ¶¶34-50. Thereafter, in May of 2019, when the DCF questioned the Leydon about the bullying and racial harassment that N.M. was experiencing while at school, Leydon intentionally and deliberately lied to DCF, claiming that (1) N.M. was not bullied, and that it was just "peer-on-peer conflict", despite the incidents clearly meeting the definition of bullying with the student handbook; (2) neither Jane Doe nor N.M. reported that N.M. was being bullied; and (3) N.M. was the aggressor, as opposed to her tormentors. ¶¶ 53-58. Moreover, after DCF confronted Leydon about her misrepresentations, school officials began retaliating against N.M., punishing her after she reported incidents of bullying. ¶¶72-87. See e.g., Harrington v. City of Attleboro, 172 F.Supp.3d 337, 345 (D. Mass. 2016)(finding that the plaintiff's allegations of continued harassment by her peers over a course of four years, combined with allegations that defendant failed to take additional reasonable measures after it learned its initial remedies were ineffective, rose to the level of deliberate indifference to survive a motion to dismiss pursuant to 12(b)(6). See also, Thomas v. Springfield Sch. Comm., 59 F.Supp.3d. 304 (denying a motion to dismiss where defendant's deliberate indifference was a question of fact because the school's actions demonstrated a complete lack of concern about sexual contacts between students); Doe v. Bradshaw, No. 11-cv-11593-DPW, 2013 WL 5236110 (D. Mass. Sept. 16, 2013).

Therefore, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss Count VI of her Complaint.

3. Plaintiff Has Sufficiently Alleged That N.M. Was Retaliated Against for Her Exercise of Her First Amendment Right to Free Speech, and that the City's Retaliation Chilled Her Right to Report the Pervasive Bullying and Racial Harassment.

Plaintiff concedes that the proper vehicle for her claim alleging retaliation under the First Amendment is 42 U.S.C. §1983. However, given that Plaintiff has successfully pled a §1983 claim, see §C.1, infra, and, as discussed below, plausibly pleads the elements of a First

Amendment retaliation claim, this Court should allow the claim to move forward. See generally, Rzeznik v. Chief of Police of Southampton, 374 Mass. 475 (1978)(finding the plaintiff could move forward on a §1983 claim even though it was not specifically pled, as plaintiff properly pled the essential elements of the claim).

In order to succeed on a claim for retaliation under the First Amendment, a plaintiff must first prove that "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating fact in the adverse action." D.V. ex rel. Elisabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). If a plaintiff makes such a showing, the burden then shifts to the defendant to show a legitimate, non-retaliatory explanation for the adverse action. Id. This determination, though, is usually one for the factfinder. Guilloty Perez v. Pierluisi, 339 F.3d 43 (1st Cir. 2003).

Here, as the City concedes, Plaintiff has alleged three distinct categories of events that form the basis of her claims for retaliation. First, one of N.M.'s tormentors took a selfie with Leydon, N.M.'s adjustment counselor, and sent it to N.M. stating that the Leydon also hated N.M.'s guts. Even though it had direct knowledge that this photograph was sent to N.M., the City did nothing to correct the situation. ¶¶42-43. Second, the City intentionally and deliberately lied to DCF about the numerous bullying incidents, first stating that they did not happen, and then once they realized they were caught in a lie, changed their story to shift the blame to N.M. ¶¶53-60. Finally, the City actively punished N.M. in September of 2019, after she continued to be bullied and harassed on school grounds, even though a written safety plan was allegedly in place. ¶¶71-88. While Defendant may disagree that these actions are retaliatory, it offers no authority to support its position that they should not be viewed as such. Instead, a reasonable inference to be drawn from the Complaint is that Plaintiff has plausibly alleged that N.M. was retaliated against

for exercising her First Amendment Right to free speech to report the bullying. Again, while

Defendant may allege that it had a valid reason for taking the actions that it did, assessment of

that allegation is not appropriate for a 12(b)(6) motion. Accordingly, Defendant's Motion to

Dismiss Count VII must also be denied.

4. Plaintiff Properly Alleged Claims for Negligence and Negligent Infliction of Emotional Distress, and the City of Northampton Is Not Shielded From Liability by the Massachusetts Tort Claims Act.

In addition to the statute of limitations and presentment issues, discussed supra, the City also

moves to dismiss Plaintiff's claims of negligence (Count I) and negligent infliction of emotional

distress (Count II) on the grounds that (1) the Complaint is devoid of any allegations of negligent

training or supervision; (2) Plaintiff failed to demonstrate a causal connection between the

negligence and the harm; (3) the City did not owe a legal duty to prevent harm to N.M. (namely

her suicide); and (4) the City is shielded from liability under the Massachusetts Tort Claims Act.

As discussed more fully below, all of these arguments are flawed, and this Court should deny

Defendant's Motion to Dismiss Count I and Count II.

i. **Plaintiff's Negligence and Negligent Infliction of Emotional Distress Claims Are Not Based on Negligent Training and/or Supervision.**

Defendant appears to assert two different reasons in its argument that Plaintiff's

Negligence and Negligent Infliction of Emotional Distress claims are barred. First, Defendant

argues that Plaintiff's Complaint is devoid of any allegations of negligent training or supervision.

This is true. However, Plaintiff's claims are not based on negligent supervision or training of its

employees. Rather, Plaintiff's allegations rest on the City's negligence in following ministerial

policies and procedures related to bullying and harassment; failing to provide a safe environment

for students entrusted to its care; failing to follow the written safety plan in place for N.M.,

which allowed for the continued bullying and physical assaults; and negligently failing to

supervise its students. ¶102. The Complaint is replete with factual assertions which are the foundation for these allegations.

Defendant also appears to argue that Plaintiff's claims must be dismissed because the allegations exceed the scope of the presentment letter. This is inaccurate, as the presentment letter, which is attached as <u>Exhibit B</u> to Plaintiff's Complaint, clearly articulates that N.M. was bullied and assaulted a result of gender and race, which ultimately led to retaliation by the City of Northampton. Furthermore, the presentment letter details that N.M. was caused to suffer significant physical and emotional harm, including a concussion and exacerbation of her mental health concerns.

### ii.    Plaintiff Has Sufficiently Demonstrated a Causal Connection Between the City's Negligence and the Harms Suffered by N.M.

Defendant alleges that Plaintiff has not plausibly pled a causal connection between the City's negligence and the harms suffered by N.M., including her suicide, instead arguing that any allegations are "speculative." Defendant relies on <u>Light v. Roney</u> to support its arguments that Plaintiff's claims as to causation are too speculative. However, the facts of that case are not applicable to the facts of this case. <u>Light</u> involved a claim for professional malpractice relating to the sale of certain insurance policies. 1995 WL1280766. There, the Court found that the minor Plaintiff had not established a sufficient connection between the harm and the defendant's acts. <u>Id.</u> at *4. Defendant also cites to <u>Chang v. Winklevoss,</u> in an attempt to support its argument concerning causation. 95 Mass.App.Ct. 202 (2019). However, in that case, which concerned a legal malpractice claim, the plaintiff could not prove he would have obtained a better result but for the alleged malpractice, where at the time the complaint was filed, he still retained a right to the settlement agreement.  <u>Id.</u> at 217.

In comparison, the Plaintiff specifically alleges that, as a result of the City's negligence, N.M. continued to endure severe and pervasive bullying and harassment, which led to feelings of loneliness, increased anxiety and depression, and multiple suicide attempts, notably because she was afraid to go back to school due to the bullying, and that she thought it would be better off to die. ¶¶40, 51, 52. Plaintiff further alleged that N.M.'s mental health began to deteriorate in September of 2019, after she was viciously attacked by a group of students. ¶66. Tragically, on the day she took her own life, N.M. broke down in front of her mother because she could not understand why the City could not keep her safe. ¶91. These allegations plausibly allege that Plaintiff's injuries, including her death, were as a result of the City's negligence. Whether Plaintiff is successful in proving causation at a later stage is not an appropriate determination at this time. Harrington v. Lesley University, 554 F.Supp.3d 211, 221 (2021)(quoting Garcia-Catalan v. United States, 734 F.3d 100, 102-103 (1st Cir. 2013).

### iii.     The City Owes a Legal Duty to All Students, Including N.M., to Prevent Harm.

Defendant argues that Plaintiff's claims for wrongful death must be dismissed because it had no legal duty to prevent N.M.'s suicide. This argument ignores both the applicable statutory and common law, and the factual allegations supporting Plaintiff's claims. Public schools "shall be liable for . . . personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." G.L. c. 258, §2. It is therefore, well established, that schools within the Commonwealth owe students a duty to provide a safe and secure environment. Doe v. Superintendent of Sch., 421 Mass. 117, 113 (1995)(discussing a school's responsibilities). Moreover, courts have consistently held that there is a special relationship between schools and their students which gives rise to a duty of care. See

Nguyen v. Mass. Inst. of Tech.[4], 479 Mass. 436 (2018)(finding that the special relationship between a school and student may give rise to a duty to act or protect a person where a duty would not otherwise would exist); Mullins v. Pine Manor Coll., 389 Mass. 47 (1983)(finding the school could be held liable for the criminal conduct of a third party).

In arguing that it owed no duty to prevent N.M.'s death, Defendant attempts to narrow the holding of Nguyen to cases which involve only a university-student relationship. However, in analyzing the Restatement (Third) of Torts, the Nguyen Court found that one situation in which the "special relationship" gave rise to a duty was "a school with its student." Nguyen, 479 Mass. 449-450. See also Restatement (Third) of Torts: Liability for Physical and Emotional Harm §40(b)(5). The Court further recognized there "is a wide range of schools – from elementary to graduate school – and great differences in the scopes of student-school relationships." Nguyen, at 450. While Nguyen dealt specifically with the university-student relationship, it is clear that the Court believed *all* schools owed some sort of duty to its students as a result of the special relationship.

Moreover, "[t]he particularities of the university-student relationship" which were of paramount importance in defining the duty in Nguyen are also present in public high schools. High schools are "clearly not bystanders or strangers in regards to their students." Id. "The primary mission of the [high school] is academic in nature." Id. High schools "sponsor and have special relationships with their students regarding athletics and other potentially dangerous activities." Id. High schools "are also property owners and landlords responsible for their students' physical safety on campus." Id. They also provide students with social, athletic, and

---

[4] Although the Supreme Judicial Court ultimately found the plaintiff in Nguyen could not, as a matter of law, establish that the university was responsible for his son's death, this decision was on a motion for summary judgment, not a motion to dismiss pursuant to Rule 12(b)(6).

cultural opportunities which provide a community for students. Id. at 451. See also, Helfman v. Northeastern Univ., 485 Mass. 308, 318 (2020). However, unlike university students, high school students, like N.M., are children, not adults. The only logical conclusion to be drawn is that a public school, such as a high school, would have a higher duty of care than that of a university to its students, not a lesser duty of care.

Defendant also argues that Plaintiff did not allege sufficient facts to trigger the City's duty to take reasonable measures to prevent N.M. from taking her own life. A closer look reveals that the City is again attempting to argue that Plaintiff cannot prove a causal connection between its actions and N.M.'s death. Whether Plaintiff will ultimately be successful in proving causation is not the appropriate standard for this Court to consider. Reardon v. Comm'r of Correction, 20 Mass.App.Ct. 946, 947 (1985)(rescript)(finding a Rule 12(b)(6) motion "is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiff's claim.").

When looking at the factual allegations of the Complaint, Plaintiff has made a plausible showing of entitlement to relief. Plaintiff alleges that in May of 2019, N.M. attempted to take her own life on two separate occasions, and that she told her doctors she thought "it was better off to die" than to go back to school where she was being bullied. ¶52. The City was well aware of N.M.'s attempted suicides, as the attempts triggered a DCF investigation in which the City participated. ¶¶53-59. These facts alone are enough to trigger the City's duty to take reasonable measures to protect N.M. from self-harm. See Nguyen, 479 Mass. 453 ("Where a university has actual knowledge of a student's suicide attempt that occurred while enrolled at the [school] or recently before matriculation, or of a student's stated plans or intentions to commit suicide, the university has a duty to take reasonable measures under the circumstances to protect the student from self-harm."). See also, Mullins v. Pine Manor College, 389 Mass. 47, 52 (1983)("Parents,

students, and the general community still have a reasonable expectation, fostered in part by colleges themselves, that reasonable care will be exercised to protect … students from foreseeable harm."). However, Plaintiff also alleges that on September 19, 2019, after N.M. was savagely attacked and then subjected to cyberbullying, N.M. was brought to the office where she made suicidal statements to the Assistant Principal. ¶¶ 72-75. Throughout the fall of 2019, N.M.'s mental health deteriorated, and she continually questioned why the school could not keep her safe, and that she was the one who was punished even though she was the victim. ¶¶64-91.

Based on the above allegations, Plaintiff has plausibly pled that the City's duty, to take reasonable steps to prevent N.M. from being harmed, was triggered, and that the City failed in its duty to protect N.M. As recognized by the Court in Nguyen, our society has accepted that there is "moral blameworthiness on the part of a [school] in failing to act to intervene to save a young person's life, when it within the [school's] knowledge and power to do so." Nguyen, 479 Mass. 456. Therefore, this Court should deny Defendant's Motion to Dismiss.

### iv. The City's Actions Fall Within Three Exceptions to the Massachusetts Tort Claims Act, and therefore the City Cannot Shield Itself from Liability.

Defendant also attempts to shield itself from liability by invoking sovereign immunity under the Massachusetts Tort Claims Acts, M.G.L. c. 258, §10. However, as Plaintiff's Complaint demonstrates, Defendant's actions fall within three exceptions to the MTCA: (1) the Defendant's refusal to follow its own internal bullying policies is not considered a discretionary function, (2) N.M.'s situation was originally caused by the Defendant, and (3) Defendant provided Jane Doe and N.M. with a specific, written assurance of safety, which convinced Jane Doe to allow N.M. to return to Northampton Public High School in September of 2019, after she was physically assaulted for the first time.  M.G.L. c. 258 §10(b), (j)(1).

Under G.L. c. 258, §10(b), a government is shielded from liability where the "claim is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee." The exception distinguishes between "discretionary" acts, which involve "conduct that involves policy making or planning," and "functionary" acts, which "implement the established policy." Harry Stoller & Co., v. Lowell, 412 Mass. 139, 141-142 (1992). See also, Prado v. Hodgson et al, Superior Court Civil Action No. 1784CV02900 (Superior Court, April 11, 2023)(finding defendant's negligent implementation of its policies and procedures was not protected un G.L. c. 258, §10(b)), (attached hereto as Exhibit A). "The discretionary function exception is narrow, 'providing immunity only for discretionary conduct that involves policy making or planning.'" Greenwood v. Easton, 444 Mass. 467, 470 (2005) quoting Harry Stoller & Co., 412 Mass. at 142. It does not involve the "carrying out of previously established policies or plans." Barnett v. Lynn, 433 Mass. 622, 664 (2001), quoting Whitney v. Worcester, 373 Mass. 208, 218 (1997).  Here, Defendant's actions involve the carrying out of previously established policies and procedures concerning bullying and harassing. It does not involve policy making or planning. Therefore, Defendant should not be afforded immunity under G.L. c. 258.

Immunity under G.L. c. 258 §10(j) is also not warranted where a public employer is the original cause of the harm, or in other words, the employer, by its affirmative act, created the "condition or situation" that resulted in harm to the plaintiff. Barley v. Town of Auburn, 19Mass.L.Rptr. 73 (Super.Ct. 2005). Here, Plaintiff alleges that the City had an obligation to investigate the incidents of bullying and harassment; create a "Bullying and Harassment Incident Report Tracking Form"; and establish a Safety Plan for N.M. once the incidents of bullying were substantiated. These obligations were ministerial, and not discretionary in nature. ¶¶36-38.

Plaintiff also alleges that the City did not comply with these obligations because of its affirmative decision to have a policy of intentionally misclassifying bullying as "peer-on-peer conflict." As a result of this policy, students at Northampton Public High School were emboldened and encouraged to continuing bullying and harassing students, as they knew they would not be disciplined. ¶¶93-97. Simply put, Defendant's affirmative decision to have a policy of intentionally misclassifying bullying created an atmosphere that encouraged and enabled N.M.'s tormentors to continue bullying and harassing her. Cf. Harrington v. City of Attleboro, 172 F.Supp.3d 337, 350 (D. Mass. 2016)(finding that the City of Attleboro could not be considered the original cause of the plaintiff's bulling where there were no allegations that employees enabled or encouraged the bullying by her peers).

Relying on McCarthy v. City of Waltham, 76 Mass.App.Ct. 554 (2010), Defendant also argues that the only cause of N.M.'s suicide was her own state of mind. The opinion in McCarthy, that there can be no serious question that the original cause of harm was the decedent's state of mind and nothing else, can no longer can be considered controlling in light of subsequent case law that has developed over the past decade. In Commonwealth v. Carter, the Supreme Judicial Court held that, although "legal causation in the context of suicide is an incredibly complex inquiry", the defendant's conduct could be found, beyond a reasonable doubt, to have caused the plaintiff's suicide. 481 Mass. 352, 363 (2019). See also, Nguyen v. Massachusetts Institute of Techn., 479 Mass. 436 (2018) (recognizing a school's duty to take reasonable steps to prevent suicide in certain circumstances). Therefore, at this stage, Plaintiff has plausibly pled that Defendant's affirmative actions were the original cause of harm to N.M.

In the alternative, even if this Court were to find that the City's actions were not the original cause of harm to N.M., the City's explicit and specific assurance of safety to Jane Doe

and N.M., through the written safety plan, precludes the City from availing itself of the

protection of G.L. c. 258. Defendant argues that the Safety Plan was just a plan, and not a

specific assurance of safety. However, the Plan itself states "intentional adult supervision of

N.M. through the school day is a necessary step in **securing her physical and emotional safety**

**at school."** See Ex. C of Plaintiff's Complaint. The Plan further details all the necessary steps

the School needs to take to ensure N.M.'s safety throughout the school day. Plaintiff also alleges

that the only reason she allowed N.M. to return to school in September of 2019 was due to the

City's specific assurance of safety, through the implement of the safety plan. ¶¶69-70. As a

result, Plaintiff has plausibly pled that Defendant provided Plaintiff and N.M. with a specific

assurance of safety in September of 2019, which would bar the City from receiving the

protection of immunity under §10(j).

5. Article 16 of the Massachusetts Declaration of Rights Does Not Have to be Brought as A Federal Claim.

Although Defendant has stated that Plaintiff can not bring a direct claim pursuant to Article

16 of the Massachusetts Declaration of Rights, Defendant fails to offer any support for its

position. The two cases it relies on, Brodsky v. New Eng. Sch. of Law, and Layne v.

Superintendent, Mass. Corr. Inst., Cedar Junction, involved Article 114 of the Massachusetts

Declaration of Rights. The Court found that there was no private right to action under Article

114. Private rights of action under other Articles of the Massachusetts Declaration of Rights have

been found to exist. Cf. Podgurski v. Dep't of Corr., 2014WL 4772218 (D. Mass., 2014)(finding

that, as a general proposition, a cause of action, can, in certain circumstances be brought directly

under the Massachusetts Declaration of Rights). Moreover, the Declaration of Rights repeatedly

has been held to provide greater substantive due process protection to Massachusetts residents

than the Federal Constitution. Commonwealth v. Gonslavez, 429 Mass. 658, 667-68 (1999). See

also, Moe v. Sex Offender Registry Bd., 467 Mass. 598, 599, 615-16 (2014)(finding violation of

Due Process rights under Massachusetts Declaration of rights without addressing Federal due

process claims). As it relates to this case, state courts have found that the proper analysis of an

Article 16 claim is the same as analysis of a First Amendment claim. See Reaves v. Correctional

Medical Servs., 20 Mass.L.Rptr. 67 (September 16, 2005)(finding that, where the plaintiff's

claim for violation of his First Amendment rights failed as a matter of law, so too did his claim

for violations of Article 16). Therefore, Plaintiff can bring a separate claim under Article 16 of

the Massachusetts Declaration of Rights.

## D. In the Alternative, Plaintiff Should Be Granted Leave to File an Amended Complaint.

In the Alternative, if this Court believes Plaintiff did not sufficiently plead the allegations and

theories of liability found within the Complaint, Plaintiff respectfully requests this Honorable

Court grant her leave to file an Amended Complaint. Under Rule 15(a)(2), "leave shall be freely

given [to amend] when justice so requires." Reasons for denying a motion to amend include: (1)

undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to

cure deficiencies by amendments previously allowed[5]; (4) undue prejudice to the opposing party;

and (5) futility. Harrington v. City of Attleboro, 172 F.Supp.3d 337, 352 (2016).  None of the

enumerated reasons for denial apply to the facts of this case.

Here, there is no prejudice to Defendant by Plaintiff's proposed amendment. The original

Complaint was only recently filed. Defendant has not yet answered, and none of the Parties have

engaged in written discovery. There is also no evidence of bad faith, dilatory motive, or under

---

[5] The third factor, repeated failure to cure deficiencies in prior amendments, is not applicable to this case.

21

delay on the part of Plaintiff. Finally, there are no allegations that Plaintiff's amendment would be futile.

IV.     CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

Respectfully Submitted,

Robert A. DiTusa, Esq. (BBO#649218)
Laura D. Mangini, Esq. (BBO#684620)
Alekman DiTusa, LLC
1550 Main Street, Suite 401
Springfield, MA 01103
Tel. (413) 781-0000
robert@alekmanditusa.com
laura@alekmanditusa.com

CARMEN L. DURSO, ESQUIRE
BBO # 139340
Law Office of Carmen L. Durso
175 Federal Street, Suite 505
Boston, MA 02110-2211
617-728-9123
carmen@dursolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered** participants on April 20, 2023.

/s/ Laura D. Mangini

_____

Laura D. Mangini, BBO #684620